We're now on United States of America v. Mark Whitehead, correct? And that's 18-50111, and each side has 10 minutes. Good, I guess, good afternoon. Good afternoon, Your Honors. May it please the Court, Ashwini Mate representing Mark Whitehead. And I'm going to try to reserve two minutes of my time for rebuttal and spend my limited time on the apprendee and recusal issues, unless the Court has other questions. Sure. Your Honors, the Ninth Circuit has explicitly rejected the idea that the statutory maximum for contempt should be life, and instead determined that the most analogous offense should provide the statutory maximum for contempt. All that Mr. Whitehead is arguing is that that most analogous offense finding should be submitted to a criminal jury to find beyond a reasonable doubt. Failing to do so is an apprendee violation. How would it be presented to the jury exactly, assuming you had a questionnaire? Your Honor, I mean- What would the jury exactly be asked? There could be a special verdict form, which we often do in the apprendee verdict- No, no, I agree with that, but what would the- Was there an intent to defraud and an intent to permanently deprive Mr. Okada of the assets? It's a simple, if guilty, does the jury also find that there is an intent to permanently deprive and an intent to defraud? But the government never requested such a special finding, and without knowing exactly what was necessary to the jury's verdict finding in this case, we can't say that the jury found- I mean, arguably, I don't think the jury found fraud at all beyond a reasonable doubt. It wasn't even part of the charges, it wasn't part of the instructions, and it wasn't part of the verdict form. It wasn't even in the receivership order and the final judgment that he was alleged to have violated. The word fraud appeared nowhere in these documents. And whose burden was it to ask for a special verdict? Oh, Your Honor, I believe it was the government's burden. I mean, it's not our job to tell the government what elements they should be seeking to convict a defendant under. And, in fact, I think this court has found that- Well, the judge told them that. Right, right. But the question is, the question is, should you have said we'd like a special verdict? Your Honor, again, I don't think it's our burden to say, you know, the government- I mean, at the point that the judge said that they were seeking a fraud finding, the government in no way affirmatively stated that they were seeking a fraud finding. We could only assume that perhaps the government wasn't going to do that. And, I mean, it's, again, not our job. The government, as I understand it, didn't want anything more than to be treated as a misdemeanor. Exactly. Whether it's six months or a year, I forget the- Six months, they were asking for a better term. And it was the judge who insisted that that wasn't enough and that, you know, essentially two years was the more appropriate. Correct, Your Honor. And so there is no way for us to have somehow asked the government to seek additional elements to prove against our client. And, I mean, an analogous context is, again, in the drug context where they often are required to find the drug quantity. And in this analogous context, I think the circuit has found that it's the government's burden to seek those facts from either an admission from a defendant or in the context of a guilty plea. And I think that same analysis applies to seeking to find that in the context of a jury finding in a trial in a criminal verdict, in a criminal case. And so, you know, again, without those findings and without any mention of fraud or an intent to defraud or an intent to permanently- So what's your best argument that Apprendi applies to criminal contempt? Oh, Your Honor, I think most of the cases, I believe it's Bloom v. Illinois, Caperton. A lot of these cases have, maybe not so Caperton, but a lot of these cases have indicated that once a contempt goes to a jury trial or once a criminal contempt is non-summary and it's a full jury trial, all of the intended constitutional protections adhere to that. That includes the Fifth Amendment, the Sixth Amendment, including the right to a jury trial. And I believe a right to a jury trial encompasses the right to a jury finding on all elements that Mr. Whitehead would have to be guilty of. So, I mean, I would just point the court to several of the cases cited in my brief, indicating sort of the history of how the Supreme Court actually has in particular dealt with contempt and determined that once a non-summary proceeding is initiated, full constitutional rights adhere to it. And I actually, the citation I think is in a footnote in my reply brief where I discuss how non-summary judicial proceedings, sorry, non-summary contempt proceedings are distinct from full contempt jury trials. And several of the cases cited in that footnote discuss how all the constitutional protections attach to a full contempt jury trial. And so I think it's clear that without any possible finding by the jury that fraud was committed here, and indeed we don't even have a unanimous jury verdict on which of the four acts that Mr. Whitehead allegedly committed, there's really no way to determine what was necessary for the jury verdict. And, in fact, again, I would argue that fraud was definitely not necessary for this jury verdict. But I think just as it's clear that the jury here didn't have to find that Mr. Whitehead acted fraudulently or stole, I think it's equally clear, and this is relevant to my recusal issue, that the court only did so by relying on facts that weren't even in front of this criminal jury. And, you know, the Apprendi issue really highlights sort of the extraordinary nature of this proceeding. I think the government said it's only in an extraordinary case where something like recusal, either under the statute or under the Constitution, is required. But I think we have that extraordinary case here. I mean – Well, what is its abuse of discretion though, right? Abuse of discretion for recusal? Well, recusal, right. Yes. Okay. Sorry. So that's always a tough rock for you to push uphill. But, again, Your Honor, Judge Carney didn't even reach the issue of whether or not constitutional recusal applied. And I'd like to make a point that constitutional recusal is very separate from statutory recusal. Again, the extrajudicial doctrine which Judge Carney relied on to deny the recusal motion has never been acknowledged as a limitation on constitutional recusal. And, in fact, it wouldn't even really make sense in this context because Murchison, which provides the basis for constitutional recusal, was actually a judge acting extrajudicially, and that still provided the basis for recusal in that case. You know, furthermore, you don't have to prove – constitutional recusal isn't about the actual – sorry, statutory phrase – we don't have to prove any actual bias in order to achieve a constitutional recusal case. We only have to demonstrate that there is a reasonable probability of bias. And, again, the Supreme Court has recognized three instances where there is a reasonable probability of bias, one of which exists here. Would your argument be better if this were a court trial as opposed to a jury trial? A court trial? Oh, good. Well, because the judge didn't find him guilty. A jury found him guilty. Your Honor, I think that that argument really undermines the role of a judge in presiding over a case. I mean, judges make significant decisions in paving the way for governments to get prosecutions. And, in this case, I think we can all agree that the court's role here was very significant, not just in terms of the trial itself, but, again, in terms of selecting the statutory maximum at sentencing. The judge did – was the sentencer. So the judge's role in presiding over Mr. Whitehead's trial was still significant, no matter how – no matter – regardless of the presence of the jury, ultimately. And, Your Honor, with that, I'm going to try to reserve the rest of my time for rebuttal, unless there's other questions. Okay. Thank you. Okay. Good afternoon. Good afternoon, Your Honors. May it please the Court. Brett Sagel on behalf of the United States. I'll first address what was said here and some of the questions Your Honors addressed. But let me focus on, Judge Callahan, one of your comments about the abuse of discretion as opposed – as it relates to refusal. But I will kind of wrap that into three out of their four issues that they raised. Basically, everything in their briefs, their opening brief, their reply brief, and basically the argument right now just ignores the standard of the refuse. Focus on the recusal issue. First and foremost, Judge Carney was correct in all regards. And legally, it's supported. I'll ask you, it seems to me, what bothers me about this case, whether it means that your adversary wins or not is another story, but what bothers me is the judge, of course, was – acted as the accuser. He was the functional equivalent of the grand jury. The prosecutor says, I want to treat this as a misdemeanor with a six-month cap, and we don't even want a jury. The judge says, no, it's not enough. He's already – this is a judge who's already – and then it seems to me the charge that's ultimately filed reflects essentially the verbatim almost what the referral was. And then he makes – he rules, for example, on the admissibility of other uncharged conduct, and then he gives him the maximum sentence that he wanted to with the two years. And it just – it's not just the ordinary case where a judge says you're in contempt of an order and I'm appointing – or I'm asking the U.S. attorney or I'm appointing. There are aspects of it that I have to admit that just because they bother me doesn't mean you lose. But I just would like you to – Absolutely. I'd like you to sort of respond to that because I'm troubled. Absolutely. And let me break it. I don't want to disparage men, but I think it's Judge Staten, the woman. It is a woman. Okay. Let me take that into parts and start with Judge Staten made the referral under Rule 42, which is one of – and as the Armstrong case of this court has said, contempt can go forward on one of two ways, either by indictment or the court pursuant to Rule 42. The judge did that. Then – and the government has admitted, I think, in its brief and in the lower course multiple times – basically – and it was myself – show up to court at the initial appearance and right before, knowing nothing about this case. So we kind of tried to move it forward. We didn't know facts. And the judge said, there's more to this case. I'm denying the ruling on a bench trial and a misdemeanor, a six-month cap, and we're proceeding with jury trial. I don't mean to interrupt you. When he referred it to you, he basically wrote out what this case was about. Are you saying you just went in there and you said you only wanted to charge it as a misdemeanor because you weren't familiar with anything? No, and I think where we draw the delineation is the order to show cause which set out charges. The government, the U.S. Attorney's Office, has the discretion to go forward on one of those acts, all four of them, to indict on a wholly different part of the case, add charges. We, through our discretion, went forward with what was charged. And so while the judge is bringing the charges, as she is entitled to do under the law, we have the right to either decline the appointment, go forward with it exactly as is, and then move forward. He could say, okay, I'm going to appoint my own. He could appoint private counsel. It's happened, I've seen it. As the statute and as Rule 42 allows it? Yes. Absolutely. You're in a difficult situation, too, because you have to deal with this judge all the time, and you're not acting with total freedom because what are you going to say to this judge? No judge. We're not taking this case. Well, I can tell you that we could. I'm talking about the real world. No, and I actually think that it's a possibility that it can happen. Of course it's a possibility that it could happen, but I'm talking about the real world. It's a difficult position. You're a U.S. attorney. You appear before her every day, and she's saying, I'm referring this to you, and this is what I want you to do. And it's a difficult situation for you to say, I'm talking about this is a practical matter. I'm not saying you couldn't do it. No judge. They're not going to do it. I understand, and I understand both the practical matter and when it really boils down to it is both Rule 42 allows it, our discretion allows it, and when we sit here at a recusal stage, which is really what we're addressing at this point, is did Judge Staten do anything wrong either in the initiation process or any step thereafter? And when I say doing anything wrong, whether it be under the statutory 455, the statute in the cases relating to that specific statute, or Constitution.  And I'll ask you one last question because you still have to address the argument. We have the power, without referring to process clause or whatever, to say an exercise of our supervisory powers under the unique circumstances of this case, that should have recused herself. You're asking should the judge recuse themselves? We have the power. I think he's asking the panel. Would the panel have the power to say an exercise of our supervisory powers, and I think it's established, although when I was in your shoes I always argued you don't have supervisory powers, but established that we have supervisory powers. And we can say under our supervisory powers under the peculiar circumstances of this case, the judge should have recused herself. And I guess, and I understand what Your Honor is saying, I guess I don't know that I would fully concede that this case is so peculiar. It may not happen that often, but a case that is civil that's referred for criminal contempt does happen. And what I'd also point out is if you look at Rule 42 itself, it even has in 42A3 a provision when the judge should recuse himself, if it's aimed at the judge or in the judge's presence. That's not the case here. So could you have supervisory power? Probably. Well, is it just here on an abuse of discretion? Again, and that's getting back to that original question you asked and what I was getting to is was Judge Carney's decision, based on all the facts, illogical, implausible, or I'm drawing a blank on the third part of the abuse of discretion standard, but it's not, it was an abuse of discretion, not based under the case law, under litigy or litigy, not under the constitutional case law. And while it may seem unique and different, and especially as a judge provided certain facts in this case, it really is not that unique. And one of the facts that comes up in a lot of these recusal cases, Judge Foreman, you were a district court judge. No. You may have made some certain findings at sentencing and said certain things about a defendant first time around, and somehow, someway that comes back on appeal. You were expected and you were presumed to be unbiased to give the next opinion, and it's a waste of judicial resources to keep moving cases around just because the defendant thinks he won't get a fair shake. That's not what the law is, either under the statute, under the constitution, under the case law. And therefore, there's nothing in this case that would require a recusal. Judge Carney properly analyzed all the arguments in all of the case law and said, it's unfair to presume Judge Staten did anything improper, and actually, on the contrary, she did everything properly. And each of the steps we talked about before that you mentioned about her denying our request for a bench trial was actually based in law and fact, and she was correct. We were wrong at the time. We didn't know as much, and we've conceded that. Her decision on the sentencing, when you said sentencing to the max, she actually gave a seven-level variance downward. His guideline range was 61 to 78 months or something along those lines, and sentenced them to two years. They don't even challenge the appropriateness of this sentence other than apprendi. And since I have a minute less, I'll just direct that real quickly. Could you address whether you're familiar with UNGAR, U-N-G-A-R, from the Supreme Court in 1964 about recusals? As I stand here, it's not coming to mind as something that I'm familiar with. It's to do with a short cause hearing on the accusatory document. It wasn't cited by either party, but it seems relevant, though you're not familiar with it. I'm not. As I stand here, I can look at it, and if the court wants any supplemental briefing, I would absolutely provide it if the court wanted. All right. Thank you. And real quickly, if Your Honor's allowing me, I think it was Judge Callahan asked for the best argument under apprendi. If you look at the plain language of apprendi and A-L-E-N or however you pronounce it, A-L-L-E-Y-N-E, also from the Supreme Court, those cases specifically said this doesn't stop the judicial fact-finding function of the court. And even in this case, for you to determine there's an apprendi violation, this panel would have to, for all intents and purposes, overrule this Court's decision of Broussard, which came out after apprendi. Broussard gave the court what it needs to do, and only under 3559 to determine the statutory maxes for the $100 special assessment or probation or supervised release. It did not address apprendi, and to say this case violates apprendi would have to overrule Broussard. And that's not the case law. And this isn't really a factual determination by the judge. It's more of a legal determination, a legal determination of what's the most analogous case to create the statutory maximum. Apprendi is inapplicable in this case. We will submit on our briefs unless any of the judges have any further comments or questions. Okay, thank you. Thank you, Your Honor. Your Honors, I would like to start by saying judges do have discretion in selecting the appropriate guidelines that apply to a sentence, but they are bound by the Constitution when they try to select the statutory maximum. There is nothing about the Broussard decision that this Court would have to overrule by finding that the most analogous offense should go to a jury. The fact that apprendi wasn't raised in Broussard is irrelevant. It is being raised here, and the rule in Broussard requires that the statutory maximum be determined by the most analogous offense, and apprendi dictates that that kind of finding has to be based on the jury's verdict. And if it's not so, the jury has to find what the most analogous offense is beyond a reasonable doubt. Are you familiar with Ungar? The case I cited doesn't help you much. Well, actually, Your Honor, Ungar distinguished Murchison, which is the case that I'm primarily relying on for the constitutional recusal doctrine. And in the course of which Ungar distinguished it sort of gives me the example that I'm trying to state, that non-summary contempt proceedings are very different from summary contempt proceedings. And the carve-out in Ungar and the way that they described Murchison was that that was a summary contempt proceeding, and that when it's a non-summary contempt proceeding as existed here, that it's a different story. And that's why that court determined that Murchison didn't apply there. Indeed, no court has limited Murchison in the way that the government tried to in their answering brief. Withroe, Ungar, all of them, they only recognize that the only limitation to Murchison that exists is this carve-out that non-summary contempt proceedings can proceed in front of the same judge immediately. I'm sorry, summary contempt proceedings can proceed in front of the same judge immediately. And so I think that that's an important distinction, the distinction between non-summary and summary, and that is the only limitation of Murchison. And here at the argument that he said in the rule referral, it sets out the circumstances of when a judge should recuse, and they aren't here. I mean, again, the fact that Rule 42 doesn't acknowledge the grounds that have been established in Murchison. Well, it doesn't help you. It doesn't help, but I don't think it. I don't think it undermines the point that the rule in Murchison, which is rarely used, because, again, I don't think Rule 42A referrals look like the one that existed here. Again, I think this is an extraordinary referral. I tried as hard as I could to find other Rule 42 referral examples that have come out of the central district. And, again, in most cases, I think the government has stepped in and proceeded by indictment of some kind. And we never even saw. That document never forms a part of the record of the separate criminal proceeding. But that didn't happen here. And the Rule 42 referral went well beyond what's required by the rule in terms of what it's supposed to do. It's a simple notice provision that's meant to state the essential facts and describe a criminal contempt as criminal versus civil. And this went well beyond that in effectively prejudging Mr. Whitehead's case in the referral order itself. And so, Your Honors, with that, I think I will submit. Thank you both.
judges: Fisher, Callahan, Korman